(21 Misc. Rep. 19.)

### WHITESIDE v. CONNOLLY.

(Supreme Court, Appellate Term. July 29, 1897.)

1. SURETYSHIP—PROVINCE OF JURY.
   After defendant had arranged to purchase an assignment of a lease to plaintiff, the landlord proposed to cancel said lease and make a new one to defendant, who testified that, on the request of the landlord for security, he said he would ask no one to go his security, and, upon plaintiff's demurrer to the landlord's request that plaintiff go his security, the landlord said he would not release plaintiff, whereupon defendant said, "That settles it," and walked out, leaving the landlord and plaintiff to come to an agreement, after which defendant signed the lease. Held a question for the jury whether defendant was not willing to accept the benefit of plaintiff's becoming surety if the landlord could induce him to do so.

2. DAMAGES—EVIDENCE—CONCLUSIONS.
   As the evidence of damages arising from the false representation that a number of guests had engaged rooms in an hotel, an assignment of a lease of which defendant had purchased of plaintiff, defendant testified that, if such engagements had been made, he would have come out ahead, and that he lost $900 in the hotel, but he did not offer to show what those guests would have paid, nor whether the rooms they were said to have engaged were let for less, nor what his expenses were. Held proper to strike defendant's testimony, as mere conclusions.

3. FALSE REPRESENTATIONS—DAMAGES.
   An assignee of a lease is not entitled to recover the amount paid for the assignment, for false representations of the assignor, where it is not proved that he had been injured to that extent.

Appeal from city court of New York, general term.

Action by James Whiteside against Charles E. Connolly. A judgment entered on a verdict in favor of plaintiff for $493.50 was affirmed by the general term (44 N. Y. Supp. 1134), and defendant appeals. Affirmed.

The action was by a surety upon a lease, to recover from the lessee the amount of rent paid as surety. The defense was that the plaintiff became surety without any request of defendant, or knowledge on the part of the latter. There was also a counterclaim.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

James P. Campbell, for appellant.

E. L. Collier, of Hudspeth & Collier, for respondent.

DALY, P. J.    The plaintiff executed to Mrs. Eldert, the landlord of the Avondale Hotel, at Rockaway Beach, an agreement as surety for the defendant as lessee of the hotel, and, having paid a quarter's rent to the landlord upon the tenant's default, brings this action to recover it from the latter, who contended that the plaintiff did not become surety at his request, nor for his benefit, but for plaintiff's benefit exclusively.    That question was fairly submitted to the jury, but they found against the defendant, and the facts support the verdict.    Taking the defendant's own version of the transaction, with the undisputed facts, it appears that the plaintiff and his wife were originally the lessees of the hotel, and had arranged to sell out to the defendant, and assign the lease to him, for $300. To the assignment the consent of the landlord was necessary, and was refused; she proposing, however, to cancel the old lease and make a new one to defendant.    When the new lease was about to be executed, the landlord's agent, Mr. Davison, required security, and the following ensued, as testified by defendant:

"Mr. Davison then said: 'Mr. Connolly, you will give me security for the rent due on the 1st of August?'    And I said: 'No, sir; I won't offer anybody as security.    I won't ask anybody to go on a lease as security for me for any amount.'    Mr. Davison then said: 'Mr. Whiteside, why don't you go security here,—why don't you go security on this lease?'    And Mr. Whiteside demurred, and said he did not expect it would be asked of him.    Mr. Whiteside asked me if I could not give security, and I told him, 'No;'    I would not give him or anybody else security on a lease; and Mr. Davison said to Mr. Whiteside, 'Why don't you go security?'    And Mr. Whiteside demurred, and said he did not care to do it; and Mr. Davison then said. 'If I cannot have security on this lease, then I will refuse to release your wife;' and I said, 'Then, gentlemen, that settles it,' and I walked out.    I went out, and they talked two or three minutes, and I turned round, and Mr. Davison said, 'Mr. Connolly, this is all right.    Sign this lease,' and I took and signed it,—the two leases.    I signed the lease.    I put it in my pocket, and drew a check for the amount of money,—for $500 to Mrs. Eldert and $300 to Mr. Whiteside."

Defendant also stated that he did not know of the guaranty being written on the lease, and that it was not signed in his presence.

The lease to defendant was for four years and six months from June 29, 1896; and the rent from that date to the ensuing 1st of January, which alone was guarantied by plaintiff, was to be $1,000,— half payable on the execution of the lease, and half on August 1st. The $500 check to Mrs. Eldert was for the first installment, and the plaintiff having had to pay that falling due August 1st, the tenant refusing to pay it, this action is to recover that amount.

Upon defendant's own testimony, it was a fair question for the jury, in view of all the circumstances, whether defendant, although declining to expressly request plaintiff to become surety, was not willing to accept the benefit of plaintiff's becoming surety if the landlord could induce him to assume that obligation.    Defendant's saying, "That settles it," when the landlord refused to release Mrs. Whiteside unless he got security, and then going outside, leaving the plaintiff and Davison to come to an agreement, and then returning

and signing the lease when told by the latter that it was all right, afforded ground for the inference that he consented to plaintiff's becoming surety, and was willing to accept the benefit of it. He could have refused to sign if a surety were exacted, and his not doing so, and his failure to inquire what arrangement plaintiff and Davison had come to when the circumstances led to the inference that plaintiff had agreed to be surety, and his then signing the lease, are strong indications of his assent; not to mention that, according to the testimony of Davison and Whiteside, the latter signed as surety while he stood by afterwards and made no comment or protest.

There was a defense and counterclaim, which the court refused to leave to the jury, and error is claimed in that regard. Defendant testified that he was induced to take the lease by plaintiff's false representation that a number of guests had engaged rooms for the season, and that he was referred by plaintiff to his clerk, Mr. Bennett, who stated that about half the house was engaged,—12 or 13 rooms,—and that, as subsequently transpired, with one exception, none of the persons so represented as having engaged rooms had done so. Defendant testified that, if these engagements had been made, he would have come out a little ahead; that he lost $900 in the hotel. But this was stricken out against his objection. He was not allowed to state whether he would have made any money if there had been the engagements plaintiff told him about. This testimony was of mere conclusions of the witness, and was properly stricken out. The defendant did not offer to show that those guests would have paid, nor whether the rooms they were said to have engaged were let for less, nor what his expenses were, and the court properly instructed the jury that there was no evidence upon which they could find a verdict in dollars and cents. The defendant asked for an instruction that he was entitled to recover back the $300 paid on the signing of the lease, if the representations were false. This was properly denied, because there was no competent proof that he had been damaged to that extent. He remained in possession of the hotel all summer, and had the means of showing what he lost, and whether he lost it by the absence of guests who, as plaintiff represented, had engaged for the season, and yet he did not attempt to do so. The register book of the hotel kept by plaintiff and by him was produced by plaintiff, and it appeared that the leaves containing the names of guests during July and August had been cut out by defendant when he left the book on the premises, and the leaves were not produced. This was not a case, therefore, in which the defendant could give no better evidence of damage than he offered, but he had the means of satisfying the jury with reasonable certainty as to the extent of his loss, but did not avail himself of them.

Judgment affirmed, with costs. All concur.